Weldon, J.,
delivered the opinion of the court:
In the year 1868 the claimant, as Sophia B. Moore, by her .guardian, brought this suit, claiming the proceeds of a large amount of personal property seized by the military forces of the United States, in the year 1862, in the State of North Carolina. In the suit is also embodied a claim for rent of real estate seized by said authorities at said time, and continuing until after the war.
The demand is as follows :
•2,000 barrels of rosin, captured, by Commodore Kowau.. $40,000
50 casks spirits turpentine.* 2,500
28 barrels tar. 140
10,000 barrels rosin. 100,000
43 months’ rent of hotel stables. 8,000
43 months’ rent of distillery. 4,300
43 months’ rent of Gaston House. 12,000
43 months’rent of three warehouses. 43,000
43 months’ rent of seven houses and lots. 5,000
43 months’rent of house. 4,300
- 223,240
It is alleged, by an amended petition, that the claim is founded on the third section of the act of Congress-approved March 12,1863, commonly known as the Captured and Abandoned Property Act. The case was tried at the> December term, 1874, and is reported in 10 C. Ols. R., 375. In the decision of the cause at said term the court held as follows:
“ (1) The right" of action given by the Act of March 12, 1863, section 3 (12 Stat. L., 820), applies to rents collected'and *384 paid into the public Treasury under the provisions of the Act of July 2, 1864, section 2 (13 Stat. L., 375), by Treasury agents appointed by virtue of the first section of the former act, and the claimant is entitled to recover on the first finding $2,547.50.
(2) The claimant is entitled to recover on the second finding $10,950.
(3) The right of action given by the Act of March 12, 1863, section 3 (12 Stat. L., 820), does not apply to the proceeds of property which was captured on land by the military and naval forces of the United States, removed into a loyal State by said forces, and libeled in a district court before the passage of the Act of July 17, 1862 (12 Stat. L., 589), and which was sold and the proceeds thereof paid into the public Treasury before the passage of the Act of July 2,1864 (13 Stat. L., 375), as set forth in the third finding, and the claimant is not entitled to
■ recover on said finding. ”
The claimant, being dissatisfied with the judgment of the court, petitioned Congress in the matter; and on the 11th day of September, 1888, the following act was passed:
'“ That the Court of Claims be, and it is hereby authorized to grant a rehearing in the case of Sophia B. Moore v. The United States, No. 3446, of said court, with full power and jurisdiction to hear and determine and render judgment for the proceeds of the rosin and the turpén tine claimed to have been seized by the United States officers at the capture of New Berne, in March, 1862, and belonging to William P. Moore, jr., which rosin and turpentine are claimed to have been taken to Philadelphia, libeled, and sold by the marshal of the eastern district of Pennsylvania, under the direction of the Federal court, and the proceeds thereof deposited in the Treasury of the Dnited States: Provided, That this act shall not be construed to have any effect or operation beyond the case herein specially named.”
Under and by virtue of said act, the claimant made a motion for a new trial, which was granted at the December term, 1888. The case now comes before us as to the third item embraced in the conclusion and judgment of the court and the rights of the parties are to be decided upon the findings of fact and the law as it now stands.
The jurisdiction of the court is now supplemented with the special statute upon which the rehearing was granted, and the question we are called upon to decide is, What is the effect of that statue upon the rights of the claimant? The law provides that the court shall have “full power and jurisdiction to hear and determine and render judgment for the proceeds of the rosin and the turpentine claimed to have been seized by the *385 United States officers at the capture of New Berne, in March, 1862, belonging to William P. Moore, jr., which rosin and turpentine are claimed to have been taken to Philadelphia, libeled, and sold by the marshal of the eastern district of Pennsylvania. ”
The findings show that—
Upon the capture of said New Berne by the combined operation of the land and naval forces, the said William P. Moore, jr., was the owner of 2,000 barrels of rosin and 50 casks of turpentine, which were then and there captured by said forces. A quantity of rosin and turpentine (much larger than that so. owned by said Moore) was shipped to New York by said Rowan, in command of said naval forces, immediately after said capture. This rosin and turpentine were libeled in the United States District Court in New York, where one Ellis appeared as claimant for the same, and the court adjudged that the whole was the property of said Ellis, and ordered it to be released to him; which was done.
“About the same time said Rowan also shipped from said New Berne other rosin and turpentine (a much larger quantity than that so owned by said Moore) to Philadelphia, Pa., where, in the month of April or May, 1862, the same, with other property captured at said New Berne, was libeled, on behalf of the United States, in the District Court of the Eastern District of Pennsylvania, for confiscation and conclemnation as lawful prize of war. By interlocutory decrees all of said x>roperty was sold as perishable, and the proceeds were retained under the control of the court. Said libel was prosecuted to final judgment, no claimant to the property appearing therein; and on the 26th of May, 1864, the court entered a decree, which, after reciting the facts, is as follows :
“ ‘Wherefore, inasmuch as the said proceeds must, whether distinctively within prize jurisdiction or not, pass by the court’s order into the Treasury of the United States, and, more especially, forasmuch as the captors, naval or military, have not, under any of the statutes of the United States, any such interest in the subjects of capture or proceeds thereof as would be cognizable by the court if its prize jurisdiction were exercisable, the court is of opinion that the law officer of the United States may elect, as a mode of transmission of the moneys into the Treasury, decrees of confiscation in the form in which he applies for the same. And it is' considered, adjudged, and decreed accordingly that the said several subjects, and proceeds thereof, respectively, be, and the same are, condemned as prize of war, and confiscable as the property of enemies of the United States, and that the whole of the said proceeds, after the deduction of the costs, charges, and expenses, be paid into the Treasury for the use of the United States.’
*386 “And said proceeds were accordingly paid into the Treasury of the United States. By the sale of said property, from which said proceeds were derived, the rosin contributed to said proceeds $7.46 per barrel and the turpentine $7 per barrel. And the quantity so sold was greater than the quantity specified in this finding as having been owned by said Moore and seized at said New Berne.”
Said William P. Moore, jr., died at said New Berne in the month of October, 1864, leaving a will, wherein he gave, devised, and bequeathed ail his real and personal estate, after payment of debts and funeral expenses, to said Sophia B. Moore, the claimant. Said will was duly proved and allowed in the County Court of Craven County, N. 0., and letters testamentary thereon granted to an executor therein named, according to the' laws of said State. Said executor completed the settlement of the estate of the testator and delivered to said Sophia, through her guardian, all claims due to said estate, including the claims made in this case against the United States. At the time of the death of said William said Sophia was a minor, and her father, William P. Moore, sr., was appointed her guardian.
Since the former trial of this case the said Sophia B. Moore intermarried with, and is now the wife of, Charles Duffy. The marriage occurred prior to the passage of said act.
The right of the claimant to recover depends upon' the construction of the law authorizing the court to grant a new trial. No additional testimony has been offered on either side, and the findings are substantially the same as at the former hearing.
The power of the court, under the statute giving jurisdiction, is in law the same as if the Act of March 12,1863, had applied to the third finding when the case was originally determined. The difficulty at that time was that, in the opinion of the court, said statute did not give the court jurisdiction, and the result was that upon that finding the claimant did not recover. The findings show the ownership of William P. Moore, jr., his death in 1864, and the fact that the claimant by his will became the devisee and legatee of all his property; that the rosin and turpentine were captured in 1862, were condemned in the United States Court for the Eastern District of Pennsylvania, and the net proceeds paid into the Treasury of the United States.
The pui’pose of the statute, in authorizing the court to grant a new trial, was to give the claimant a standing in this court, . relieved from the legal embarrassment incident to her condition in the first trial of the cause. The court is to hear and deter *387 mine and render judgment for the proceeds of the rosin and turpentine upon the condition that the facts show the ownership in both, and succession, capture, condemnation, and payment into the Treasury of the net proceeds of such rosin and turpentine. These facts all appear in the findings of the court, and fulfill, as we think, the requirement of a complete cause of action when applied to the statute granting the court jurisdiction to award a new trial.
An objection is made that the law designates the claimant as Sophia B. Moore, when her legal name, in consequence of her marriage, is Sophia B. Duffy. The purpose of the statute was to authorize the court to grant a rehearing in a particular case once pending in this court; and the caséis technically described in the name of the claimant as itstood upon the record, with the number; but the right intended to be secured was to a certain person, and the person now suing as Sophia B. Duffy is identical with Sophia B. Moore. Names are conventional; but the identity of persons is absolute. This court has held that a mistake in the technical name of the party will be corrected by giving the benefit of the statute to the persons intended by the purpose of Congress. (Mcmlcel v. United States, 19 C. Cls. R., 295.) The rosin and turpentine seized and condemned, the net proceeds of which were paid into the Treasury, amounted to the sum of $15,270, and for that sum a judgment will be entered.